IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

KIM REINDL and MARY JOAN
REINDL,
            Plaintiffs,

     vs.                       **Case No. 04-2584-RDR**

CITY OF LEAVENWORTH,
KANSAS, et al.,

            Defendants.

_____

## MEMORANDUM AND ORDER

This is a civil rights, personal injury and wrongful death case.  This case arises from a conflict which developed between a driver and police officers during a traffic stop.  During the conflict, the driver, Kelly Reindl, was forced to the ground and was struck multiple times by a police officer with a baton.  He died several months later.  It is disputed whether his death was caused by the actions of the police.  His sister-in-law and mother have sued the City of Leavenworth and members of the Leavenworth Police Department in this case.  This case is now before the court upon the defendants' motion for summary judgment.

Summary judgment standards

Under FED.R.CIV.P. 56, summary judgment is appropriate in this case if a defendant demonstrates that there is "no genuine issue of material fact" and that defendant is "entitled to a judgment as a matter of law."  FED.R.CIV.P. 56(c).  This court must view the evidence and all reasonable inferences therefrom in the light most

favorable to the nonmoving party, which are the plaintiffs in this case.  Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir.) cert. denied, 537 U.S. 816 (2002).  A "material" fact is "essential to the proper disposition of the claim." Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc., 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)).  A "genuine" issue of fact exists if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler, 144 F.3d at 670 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

Defendants bear the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  Spaulding, 279 F.3d at 904 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).  Defendants must attempt to meet this burden by pointing "to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir.) cert. denied, 506 U.S. 1013 (1992).  If defendants meet this initial burden, then the burden shifts to plaintiffs to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Spaulding, 279 F.3d at 904 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986));

Anderson, 477 U.S. at 256, 106 S.Ct. 2505; Celotex, 477 U.S. at 324, 106 S.Ct. 2548.  Plaintiffs may not rest upon their pleadings to meet this burden.  Anderson, 477 U.S. at 256; accord Eck v. Parke, Davis & Co., 256 F.3d 1013, 1017 (10th Cir. 2001).  Rather, plaintiffs must set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for plaintiffs.  Mitchell v. City of Moore, Oklahoma, 218 F.3d 1190, 1197 (10th Cir. 2000).  The facts should be identified by reference to an affidavit, a deposition transcript, or a specific exhibit.  Id.

Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

Uncontroverted facts

Plaintiff, Kim Reindl, is the sister-in-law of Lewis Kelly Reindl ("Reindl" or "Kelly Reindl") and the Administratrix of his estate.  Plaintiff, Mary Joan Reindl, is Reindl's mother.  The defendants is this case are:  the City of Leavenworth, Kansas; Chief of Police Lee Doehring; police officer James Bridges; police officer Wayne Flewelling; police officer Sean Goecke; and police officer Nicholas Nordmann.

This case arises from an incident on the evening of December 6, 2002 in Leavenworth, Kansas.  At approximately 11:00 p.m.,

Reindl drove out of a restaurant parking lot and was stopped by Officer James Bridges of the Leavenworth Police Department because Reindl had not activated the headlights of his car.

Reindl exited his car and moved to the passenger side of the vehicle.  Reindl weighed 442 pounds and was 5'9" tall.  Officer Bridges repeatedly told Reindl to get back into his car, but Reindl failed to comply.  At one point, Bridges made this demand while shouting over the loud speaker of his patrol vehicle.  Officer Flewelling of the Leavenworth Police Department arrived to provide backup to Officer Bridges.

Reindl began walking toward Officer Bridges' vehicle.  Bridges ordered Reindl not to approach his vehicle, but Reindl continued anyway.  Flewelling was concerned about his safety and Bridges' safety.  So, he had his weapon at the ready position.  Bridges discharged his pepper spray once, causing Reindl to stop advancing.

Bridges ordered Reindl to the ground, but Reindl failed to comply.  He repeated this order several times, but Reindl still failed to comply.  Flewelling made an attempt to handcuff Reindl, but Reindl pulled away.  Bridges applied a knee strike to Reindl's left leg, between the knee and the hip, while ordering Reindl to the ground.  This had no effect.  Bridges delivered another knee strike.  Again, Reindl did not go to the ground.

Bridges put Reindl in a left arm bar hold and took him to the ground with the assistance of Flewelling.  Bridges then ordered

4

Reindl to put his hands behind his back.  Reindl did not comply
with the order or the officers' continued attempts to put him in
handcuffs.

Bridges applied a closed baton strike to Reindl's left leg,
between the knee and hip.  Again he ordered Reindl to put his hands
behind his back, but Reindl kept his arms tight to his chest.
Bridges applied a second closed baton strike to the same area and
told Reindl to put his hands behind his back.  Reindl pulled his
arms away from Bridges.  Bridges then applied three or four closed
baton strikes to the same area of the left leg and ordered Reindl
again to put his hands behind his back.  Reindl refused.  Bridges
then applied three more quick closed baton strikes to the same area
and directed Reindl to put his hands behind his back.  Reindl was
told to quit resisting.  At some point, Reindl stated that he could
not breathe with his hands behind his back and began complaining of
chest pains.

Bridges used the blunt end of a closed baton when striking
Reindl on the left leg.  Bridges believed this was necessary
because of Reindl's size and refusal to follow verbal commands.
The baton was used against the fleshy area of Reindl's thigh and
did not strike bone.

Five pairs of handcuffs were linked together and secured to
Reindl's wrists.  He was detained with the linked cuffs behind his
back, but his arms were almost at his sides.  Reindl complained of

chest pain and either he or the officers administered nitroglycerin from a small red pump bottle in Reindl's pocket.  Reindl complained that his eyes were burning and Officers Goecke and/or Nordmann of the Leavenworth Police Department applied water to decontaminate Reindl's eyes.

None of the officers involved in the incident had prior knowledge of Reindl's medical condition.  Defendant Chief of Police Doehring of the Leavenworth Police Department did not participate in the incident between Reindl and the officers.

Leavenworth County Emergency Medical Service was contacted and Reindl was transported by ambulance to Cushing Memorial Hospital. Bridges followed Reindl to the hospital.  Reindl called his mother from the emergency room and she went there to see him.

Reindl complained of chest pain, pain in the right arm, left thigh, multiple contusions of the left femoral area, bruises in the groin and inner thigh area.  An EKG was administered and showed normal sinus rhythm.

Plaintiff Mary Joan Reindl claims that "a big old cop" that "looked like a neo-Nazi" was at the hospital and kept telling Reindl that he was going to jail.  She claims that the cop was "very rude" and "kept haranguing [Reindl]."  She claims that the cop would not talk to her.

Reindl was given a notice to appear on a criminal charge for assault on a law enforcement officer and obstruction of official

duty.  He was released to the hospital.  Reindl was discharged from
the hospital on December 7, 2002.

Reindl had an eventful medical history prior to the incident
on December 6, 2002.  He had been admitted to Cushing Memorial
Hospital in 2000 and upon his discharge he was diagnosed with:
congestive heart failure, hypertension, coronary artery disease,
morbid obesity, hypokalemia, Type II diabetes, a long history of
angioplasty with stent placement, panniculus (large protrusion of
the abdomen to the point where it overlaps itself forming an apron
of fat), a history of multiple infections in the panniculus caused
by not keeping himself clean and by constant irritation of skin on
skin; weight of over 400 pounds, elevated risk of heart problems
and heart failure.  Another medical report in 2000 showed that
Reindl suffered from cellulitis (infection of the skin in his
body), small cracks in the skin that can allow bacteria to invade
the skin and cause cellulitis; and poor lymph drainage.

After the December 6, 2002 incident and Reindl's discharge
from the hospital, Reindl was admitted again to the hospital on
December 13, 2002.  His doctor's diagnosis included "cellulitis of
the left lower leg-lower part of the lower leg below the knee;
prior to that time he had experienced leg swelling while he was on
Coumadin and had instances of right and left leg swelling
associated with cellulitis."  Reindl was taken off Coumadin and the
right leg swelling resolved.  On December 23, 2002, Reindl was

discharged from the hospital to a skilled nursing facility for continued therapy for his leg. He was discharged from the skilled nursing facility on January 6, 2003. The discharge summary indicates "cellulitis has resolved." There was no complaint of left leg cellulitis after his discharge from the skilled nursing facility.

Reindl was next seen in the emergency room of the hospital on July 14, 2003. He showed a history including morbid obesity, obstructive sleep apnea, COPD (chronic obstructive pulmonary disease), hypertension, Type II diabetes, mellitus, neuropathy, coronary artery disease, multiple catheterizations, and history of myocardial infarction. There was no mention of left leg cellulitis as a problem. Reindl's complaints were the same ones he had in 2000; i.e., underlying coronary disease. The doctors who were consulted during this hospitalization did not mention left leg cellulitis as a concern.

Reindl was next admitted to the hospital on August 11, 2003, this time to Kindred Hospital in Kansas City. The diagnosis sheet upon admission does not list left leg cellulitis as a problem. Reindl was transferred from Kindred Hospital to Providence Hospital on August 24, 2003. The admission records indicate "unstable angina, inferior myocardial infarction, high blood pressure, hypertensive heart disease, morbid obesity, recent cellulitis, insulin-dependent diabetes mellitus, sleep apnea, and hyper-

lipodemia." These conditions are not related to the left leg cellulitis that existed in December 2002. Reindl's chest pain was resolved following his admission. However, at 2:20 a.m. on August 25, 2003, Reindl was found to be pulseless and pronounced dead. The death certificate for Reindl states as the cause of death: "pulseless electrical activity; hyperkalemia; renal failure; metabolic acidosis; crescendo angina; ischemic heart disease; and severe obesity."

The Leavenworth Police Department has a use of force policy. Each of the individual defendants in this case has completed the training and continuing education requirements to be certified law enforcement officers under Kansas law. Each of them has reviewed and been trained on the department's use of force policy.

An attorney for Reindl filed what is alleged to be a notice of claim pursuant to K.S.A. 12-105b on December 5, 2003. Plaintiffs' complaint was filed on December 6, 2004.

<u>Excessive force claim against defendant Bridges</u>

Plaintiff Kim Reindl asserts that Kelly Reindl's rights against the application of excessive force as protected under 42 U.S.C. § 1983 were violated by defendant Bridges.

The Tenth Circuit reviewed the standards a court should consider when considering such claims in <u>Olsen v. Layton Hills Mall</u>, 312 F.3d 1304, 1313-14 (10th Cir. 2002):

> A police officer violates an arrestee's clearly
> established Fourth Amendment right to be free of

excessive force during an arrest if the officer's arresting actions were not "'objectively reasonable' in light of the facts and circumstances confronting [him]." <u>Graham v. Connor</u>, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); <u>Cruz v. City of Laramie</u>, 239 F.3d 1183, 1188 (10th Cir. 2001). This court assesses the reasonableness of an officer's conduct "from the perspective of a reasonable officer on the scene," acknowledging that the officer may be "forced to make split-second judgments" in certain difficult circum- stances. <u>Medina v. Cram</u>, 252 F.3d 1124, 1131 (10th Cir. 2001) (quoting <u>Graham</u>, 490 U.S. at 396-397, 109 S.Ct. 1865). This reasonableness standard--which is "clearly established" for the purposes of § 1983 actions, <u>Wilson v. Meeks</u>, 52 F.3d 1547, 1552 (10th Cir. 1995)--implores the court to consider factors including the alleged crime's severity, the degree of potential threat that the suspect poses to an officer's safety and to others' safety, and the suspect's efforts to resist or evade arrest. <u>Medina</u>, 252 F.3d at 1131. Because the reasonableness inquiry overlaps with the qualified immunity analysis, "a qualified immunity defense [is] of less value when raised in defense of an excessive force claim." <u>Id.</u> (citing <u>Quezada v. County of Bernalillo</u>, 944 F.2d 710, 718 (10th Cir. 1991). Whether an officer acted reasonably in using deadly force is "heavily fact dependent." <u>Romero v. Board of County Comm'rs</u>, 60 F.3d 702, 705 n. 5 (10th Cir. 1995) (quoting <u>Wilson</u>, 52 F.3d at 1553).

A reasonable jury examining this record in a light most favorable to plaintiffs could conclude that a split-second judgment was not required by the officers. Reindl was not suspected of a significant crime, only a traffic offense. There were four armed officers present at the time, thus limiting any threat to officer safety. Reindl was not attempting to flee or to harm the officers. In addition, Reindl's size made it more difficult for him to comply with the officers' directions. The court believes a reasonable jury could decide that Officer Brooks employed excessive force.

Looking at the same record in the light most favorable to plaintiffs, the court believes the rights allegedly violated by defendant Brooks' conduct were clearly established as of December 6, 2002.  Therefore, qualified immunity does not justify summary judgment.

The court shall not grant summary judgment in favor of defendant Brooks upon the excessive force claim.

Failure to prevent use of excessive force

A law enforcement officer who fails to intervene, if he has the opportunity, to prevent another officer's use of excessive force may be liable under § 1983.  Mick v. Brewer, 76 F.3d 1127, 1136 (10th Cir. 1996).  Our review of the record persuades us that material issues of fact exist as to whether defendants Flewelling, Goecke and Nordmann had the opportunity to prevent defendant Bridges' alleged use of excessive force.  We believe this law was also clearly established as of December 6, 2002 under the facts viewed in a light most favorable to plaintiffs.  Therefore, the court rejects summary judgment in favor of defendants Flewelling, Goecke and Nordmann on this claim.

Municipal liability and defendant Doehring

Defendants City of Leavenworth and Chief of Police Doehring contend that summary judgment is proper because there is no evidence that a failure of policy or supervision caused plaintiffs' alleged damages in this matter.  Plaintiffs respond that these

defendants did not have a policy for dealing with suspects who suffer physical challenges and/or a policy for intervening in situations where police officers exercise excessive force.

To establish liability under 42 U.S.C. § 1983 for excessive force caused by inadequate training, supervision or discipline of officers, the plaintiff must show the following elements: 1) that the officers exceeded constitutional limitations on the use of force; 2) that the use of force arose under circumstances that constituted a usual and recurring situation with which detention officers must deal; 3) that a defendant's inadequate training, supervision or discipline demonstrated a deliberate indifference on the part of the defendant toward persons with whom the officers come into contact; and 4) that there is a direct causal link between the constitutional deprivation and the inadequate training, supervision or discipline. See Allen v. Muskogee, Okla., 119 F.3d 837, 841-42 (10th Cir. 1997) cert. denied, 522 U.S. 1148 (1998); Lewis v. Board of Sedgwick County Commissioners, 140 F.Supp.2d 1125, 1132 (D.Kan. 2001).

In this order, the court shall assume that the first two requirements can be established to the satisfaction of a reasonable jury. The court will focus upon the third and fourth requirements that deliberate indifference linked to the constitutional violation must be shown.

The standard for liability applied to an individual officer or

supervisor, as opposed to a municipality, may be somewhat different. The standard announced in case law for individuals appears to accentuate the requirement of personal knowledge or participation. In <u>Meade v. Grubbs</u>, 841 F.2d 1512, 1527 (10th Cir. 1988) the court stated: "To be liable, a supervisor must have 'participated or acquiesced in the constitutional deprivations of which complaint is made.'" Quoting <u>Kite v. Kelley</u>, 546 F.2d 334, 337 (10th Cir. 1976). In <u>Langley v. Adams County, Colorado</u>, 987 F.2d 1473, 1481 (10th Cir. 1993), summary judgment on behalf of county commissioners was sustained where the plaintiff alleged that she was terminated from employment without due process. The court determined that there was no evidence that the commissioners were aware of or involved in the process of termination. In <u>Green v. Branson</u>, 108 F.3d 1296, 1302 (10th Cir. 1997), while addressing the alleged liability of a prison warden for lack of medical care, the Tenth Circuit stated: "To be guilty of 'deliberate indifference', the defendant must know he is 'creating a substantial risk of bodily harm.'" Quoting, <u>Billman v. Indiana Department of Corrections</u>, 56 F.3d 785, 788 (7th Cir. 1995). The need to show actual knowledge was also emphasized in <u>Woodward v. City of Worland</u>, 977 F.2d 1392, 1399 (10th Cir. 1992) <u>cert. denied</u>, 509 U.S. 923 (1993):

> "[I]f a plaintiff merely shows that a supervisor 'should have known' that a subordinate was violating someone's constitutional rights and it is not established that the supervisor actually had such knowledge, the plaintiff

> will not have established a deliberate, intentional act
> by the supervisor to violate constitutional rights. At
> most the plaintiff will have established only that the
> supervisor was negligent in not observing what he should
> have seen."

In Jojola v. Chavez, 55 F.3d 488, 490 (10th Cir. 1995), the court held that to impose liability upon a school principal and superintendent the plaintiff had to prove that they knew of or acquiesced in a school district employee's pattern of sexual abuse. Although acknowledging that constructive knowledge might be sufficient, the court applied a rather strict definition of constructive knowledge. Constructive knowledge required a showing "that the underlying unconstitutional misconduct was 'so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of [it].'" 55 F.3d at 491, quoting Thelma D. ex rel. Delores A. v. Board of Educ., 934 F.2d 929, 933 (8th Cir. 1991).

Municipal or county defendants appear to be treated somewhat differently when a failure to train or supervise is alleged. Previous "widespread or flagrant" instances of unconstitutional conduct are not required to prove constructive knowledge necessary to prove deliberate indifference. In Allen, 119 F.3d at 842; Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998); Brown v. Gray, 227 F.3d 1278, 1286 (10th Cir. 2000); and Olsen, 312 F.3d at 1317, the Tenth Circuit has referred to Supreme Court case law holding that evidence of a single violation of federal rights, with

14

a showing that a governmental entity has failed to train its employees to handle recurring situations presenting an obvious potential for such violation, is sufficient to trigger liability. See City of Canton v. Harris, 489 U.S. 378, 390 (1989); Board of County Commissioners v. Brown, 520 U.S. 397, 409 (1997). Still, a violation by a municipality must be a "highly predictable" or "plainly obvious" consequence of the municipality's action, and the municipal policy must be the "moving force" behind the violation. Olsen, 312 F.3d at 1318, citing Barney, 143 F.3d at 1307 and Brown, 520 U.S. at 399.

It is clear on the record that, viewed as a supervisor, defendant Doehring is not liable and is entitled to summary judgment upon plaintiffs' § 1983 excessive force claim. There is no evidence of personal participation or acquiescence in instances of excessive force. Nor is there evidence of widespread and flagrant instances of unconstitutional conduct.

If one views defendant Doehring as a policymaker, then perhaps the standard applied to defendant City of Leavenworth as a municipality, should be applied to Doehring as well, i.e., whether Doehring or the City were deliberately indifferent to a need to train Leavenworth police officers regarding the handling of suspects who suffer physical challenges or the responsibility to intervene against officers who utilize excessive force.

In this respect there is no evidence that either Doehring or

15

the City of Leavenworth had actual knowledge of a need for different training. Nor was there a history of incidents from which to imply a constructive knowledge of a need for different training. The issue is whether the alleged need for training in this case was so "plainly obvious" that the alleged constitutional violation was a highly predictable result of the failure to implement different training. We believe summary judgment is appropriate as to this aspect of plaintiffs' claims for the following reasons.

First, there is no evidence on the record that Leavenworth police officers were trained to ignore the physical challenges faced by a person subject to arrest or detention. Nor is there evidence that Leavenworth police officers were trained to stand by and watch while other officers exercised excessive force. Thus, this case is different from the <u>Allen</u> case, where there was evidence that police officers were trained to act recklessly and in a manner that created a high risk of death. It is also different from <u>Brown</u>, where the officers acted according to an admittedly risky "always armed/always on duty" policy for which there was no special training. It is different from <u>Olsen</u>, where evidence showed that prebooking officers at a jail were given no training on how to deal with inmates suffering from obsessive compulsive disorder (present in more than 2% of the population) who required medication to stave off a panic attack. The use of force policies

16

and training materials that are part of the summary judgment record do not specifically address these situations. But, there is no indication that these materials constituted the sum and substance of the officers' training. Therefore, there is no evidence of an absence of training.

A movant for summary judgment does not have to negate the nonmovant's claims in order to obtain summary judgment. <u>Barney</u>, 143 F.3d at 1307. The movant must only show or point out to the district court that there is an absence of evidence to support the nonmoving party's case. <u>Id</u>. (interior citations omitted). If the movant satisfies that burden, then the nonmovant must set forth specific facts showing a genuine issue for trial as to "'those dispositive matters for which it carries the burden of proof.'" <u>Id</u>. quoting, <u>Kaul v. Stephan</u>, 83 F.3d 1208, 1212 (10th Cir. 1996). Plaintiff has not set forth specific facts which show that the City of Leavenworth or defendant Doehring failed to train police officers to consider the physical challenges facing suspects for arrest or that they failed to train police officers to intervene to prevent the exercise of excessive force.

Second, assuming that plaintiff can produce evidence of a lack of training in these areas, the record fails to demonstrate that the absence of training presented an obvious potential for a violation or that it was a moving force behind the alleged violation. While police may be expected to confront suspects who

17

are obese, the court does not find that treating obese suspects in accordance with the use of force policy applicable to all suspects presents an obvious potential for a violation.  While directing an obese individual to get on the ground potentially can lead to risks of positional asphyxiation, for example, that did not occur in this instance and steps may have been taken to lessen that risk. Directing an obese individual to get on the ground may constitute a greater burden for such a person than a person with a normal build, but there is no evidence that this was unknown to the officers or that ignoring that fact constitutes a violation of the Fourth Amendment.  The alleged violation in this case is the striking of blows upon Kelly Reindl with a police baton while he was on the ground.  If this happened without justification, it would be a violation regardless of the weight of the suspect. Therefore, the court does not believe through direct evidence or reasonable inference plaintiff can demonstrate that an absence of training regarding the handling of obese suspects by defendants Doehring or the City of Leavenworth presented an obvious potential for a violation or was a moving force behind the alleged violation in this case.

Similarly, there is no evidence that the failure to intervene against the use of excessive force by police officers presented such an obvious potential violation, that the alleged violation in this case was a highly predictable or plainly obvious consequence

of the absence of training on the duty to intervene.  Clearly, the training and expectation that police officers would not use excessive force made it less foreseeable and apparent that an absence of training on the duty to intervene would lead to a Fourth Amendment violation.  Furthermore, as in <u>Barney</u>, it seems that specific or extensive training is hardly necessary for a police officer to know that another officer should not be permitted to apply excessive force against a suspect.  143 F.3d at 1308 (jailers should know without training that sexually assaulting inmates is inappropriate).  Thus, the need for such training is not patent or obvious.  Moreover, there is no evidence that training officers to intervene against excessive force would have prevented the alleged exercise of excessive force in this instance.  Sometimes employees ignore training.  Accordingly, one cannot conclude that the absence of training on this issue was a moving force behind the alleged failure to intervene by the officers in question.  Ultimately, this case resembles <u>Carr v. Castle</u>, 337 F.3d 1221 (10th Cir. 2003), where the Tenth Circuit concluded that a lack of evidence showing deliberate indifference or a direct causal link to a suspect's death doomed multiple allegations of a failure to train lodged against a defendant municipality.

<u>Intentional Infliction of Emotional Distress</u>

Plaintiff Kim Reindl is bringing a claim for intentional infliction of emotional distress on behalf of the estate of Kelly

19

Reindl against defendant Bridges.   Plaintiff Mary Joan Reindl is
also bringing a claim for intentional infliction of emotional
distress against defendant Bridges.   The claim on behalf of Kelly
Reindl's estate is based upon the alleged beating at the location
of the traffic stop as well as Officer Bridges' alleged comments
thereafter at the hospital.   The claim by Mary Joan Reindl is based
upon Officer Bridges' comments at the hospital.

There are four elements to the state law tort of intentional
infliction of emotional distress or "outrage," as it is also
called: "(1) [t]he conduct of the defendant must be intentional or
in reckless disregard of the plaintiff; (2) the conduct must be
extreme and outrageous; (3) there must be a causal connection
between the defendant's conduct and the plaintiff's mental
distress; and (4) the plaintiff's mental distress must be extreme
and severe." Nicol v. Auburn-Washburn USD 437, 231 F.Supp.2d 1107,
1118 (D.Kan. 2002) (citations omitted).   For an outrage claim to
survive summary judgment, "the court must, as a matter of law,
first determine that reasonable fact finders might differ as to:
(1) whether defendant's conduct may reasonably be regarded as so
extreme and outrageous as to permit recovery, and (2) whether
plaintiff's emotional distress was so extreme and severe that the
law must intervene because no reasonable person should be expected
to endure it." Id.   To be "extreme and outrageous," the conduct
must be "beyond the bounds of decency and utterly intolerable in a

civilized society." Id. These threshold requirements are "'necessarily high to separate meritorious claims from those based on trivialities or hyperbole.'" Id. quoting, Rupp v. Purolator Courier Corp., 790 F.Supp. 1069, 1073 (D.Kan. 1992).

Defendant Bridges asserts in the motion for summary judgment that the threshold requirement of extreme and outrageous behavior is not reached by his alleged conduct. We agree with defendant Bridges that plaintiff Mary Joan Reindl's outrage claim must be dismissed for failing to meet the threshold requirement of outrageous conduct. The court does not believe the comments defendant Bridges allegedly made in Mary Joan Reindl's presence at the hospital can be reasonably regarded as utterly intolerable in a civilized society. While a reasonable jury might find the comments upsetting, the comments by themselves are not sufficient to constitute outrageous behavior. In Dotson v. McLaughlin, 531 P.2d 1, 8 (Kan. 1975), the court cited the following language from Comment d of Restatement, Second, Torts § 46:

> The liability [for outrage] clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

The commentary by defendant Bridges may have been threatening, rude and inappropriate, but we do not find it outrageous.  See <u>Lowe v. Surpas Resource Corp.</u>, 253 F.Supp.2d 1209, 1244 (D.Kan. 2003) (aggressive collection tactics targeting an elderly woman do not amount to outrage where collection agency did not have knowledge that woman was particularly susceptible to emotional distress); <u>Beam v. Concord Hospitality, Inc.</u>, 873 F.Supp. 491, 502 (D.Kan. 1994) (finding rude, abrasive and unprofessional conduct to fall short of the threshold for outrageous behavior).  On the other hand, the court shall deny summary judgment against the outrage claim made on behalf of the estate of Kelly Reindl.  See <u>Nicol</u>, 231 F.Supp.2d at 1118 (denying summary judgment in case alleging severe force by a school security employee expelling an insubordinate ninth grader).

### Negligent infliction of emotional distress

According to the pretrial order, plaintiff Kim Reindl is bringing a claim of negligent infliction of emotional distress against defendant Bridges.  Defendants have asked for summary judgment against this claim.  In response, plaintiff Kim Reindl indicates that the claim is actually that defendant Doehring's failure to properly formulate policy and train his officers caused the infliction of emotional distress.  Doc. 89, pp. 42-43.

Summary judgment is warranted against this claim for the following reasons.  First, plaintiff's claim for negligent

infliction of emotional distress against defendant Doehring and any other defendant, other than defendant Bridges, is not described in the pretrial order.  The pretrial order states that it supersedes all pleadings and controls the course of the case.  Therefore, plaintiff's claims are limited to those described in the pretrial order.  Second, a viable claim for negligent infliction of emotional distress under Kansas law must include a showing that the plaintiff suffered physical injuries that were the direct and proximate result of the emotional distress caused by the alleged negligent conduct.  Sawyer v. Southwest Airlines Co., 243 F.Supp.2d 1257, 1277 (D.Kan. 2003) (quoting Hoard v. Shawnee Mission Medical Center, 662 P.2d 1214, 1221 (Kan. 1983)); Curts v. Dillard's Inc., 48 P.3d 681, 682 (Kan.App. 2002).  There is no proof that Kelly Reindl suffered physical injuries that were the direct and proximate result of emotional distress caused by defendant Bridges' negligence.  Therefore, the court shall grant summary judgment against the claim for negligent infliction of emotional distress.

Wrongful death

Plaintiff Mary Joan Reindl has asserted a wrongful death claim against defendants City of Leavenworth, Bridges, Flewelling, Goecke and Nordmann.  The wrongful death statutes in Kansas provide:

> If the death of a person is caused by the wrongful act or omission of another, an action may be maintained for the damages resulting therefrom if the former might have maintained the action had he or she lived . . . against the wrongdoer . . .

23

K.S.A. 60-1901.

> The action may be commenced by any one of the heirs at
> law of the deceased who has sustained a loss by reason of
> the death.

K.S.A. 60-1902.

However, a § 1983 claim which alleges death as a result of a constitutional violation must be brought by the estate of the deceased victim; it cannot be brought as a wrongful death claim by the deceased's heirs. Naumoff v. Old, 167 F.Supp.2d 1250, 1252-53 (D.Kan. 2001); Estate of Fuentes v. Thomas, 107 F.Supp.2d 1288, 1295 (D.Kan. 2000). The only claim other than a § 1983 claim which remains in this matter is the outrage claim against defendant Bridges. According to the pretrial order, plaintiffs have abandoned any outrage claim against defendants Flewelling, Goecke and Nordmann.

Defendants make several arguments for summary judgment against Mary Joan Reindl's wrongful death claim. First, defendant City asks for summary judgment on the grounds that it is not alleged to have done anything that caused Kelly Reindl's death. Plaintiff seeks to assert the doctrine of respondeat superior. However, we agree with those courts which hold that an employer cannot be liable under Kansas law for the outrageous conduct of an employee because such conduct cannot be considered within the scope of employment and therefore attributable to an employer via respondeat superior. See Casas v. City of Overland Park, 2001 WL 584426

24

(D.Kan. 2001).

Defendant Doehring has not committed a wrongful act or a wrongful omission for which a state law action can be maintained. Therefore, he is entitled to summary judgment against any wrongful death claim.

Defendants also claim that there is no causal link between Kelly Reindl's death and the injuries he suffered on December 6, 2002. In response, plaintiffs refer to the deposition testimony of Dr. Peter Christiano, who stated that he believed the baton strikes "precipitated" Kelly Reindl's demise.

> Whether it caused it, . . . . From a doctor's point of view, it didn't end his life right then and there.  Of course not.  But it led to other reactions within this individual that compromised his whole health system, which was always – – which was tenuous to begin with; and I think precipitated to an earlier demise than what normally would have come about, had he . . . just been . . . taken care of by the multiple physicians who were taking care of him.

Deposition at p. 18.  The court acknowledges that this opinion may be discounted by a hospital discharge summary in January 2003 which stated that Reindl's left leg cellulitis had resolved, as well as a consideration of the conditions described when Kelly Reindl was admitted to the hospital in August 2003 and the conditions described on his death certificate.  These conditions did not seem linked to the left leg trauma Reindl suffered on December 6, 2002. However, at the summary judgment stage, the court's function is not to weigh evidence and find the truth, it is instead to determine

whether there is a genuine issue of material fact.  <u>Anderson v.</u> <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  On the basis of the record before the court, we believe the testimony from Dr. Christiano is sufficient to permit the causation question to pass summary judgment.

Finally, defendants argue that the wrongful death claim should be barred for noncompliance with K.S.A. 12-105b.  This statute requires that a notice of claim be served upon a municipality prior to filing lawsuits against municipalities and municipal employees for conduct within the scope of their employment.  <u>Miller v.</u> <u>Brungardt</u>, 916 F.Supp. 1096, 1100 (D. Kan. 1996).  However, actions which amount to outrage are not within the scope of a municipal employee's employment.  Therefore, the notice requirement does not attach to the wrongful death claim against defendant Bridges.  <u>Id</u>. at 1101.  Even if the notice requirement did apply, we are satisfied from our review of the record that the notice substantially complies with the requirements of the statute.

<u>Conclusion</u>

The court shall deny summary judgment against the § 1983 claims against defendants Bridges, Flewelling, Goecke and Nordmann. The court shall also deny summary judgment against the outrage claim and wrongful death claim against defendant Bridges.  Summary judgment is granted against the claims against defendant City of Leavenworth and defendant Doehring.  Summary judgment is also

granted against plaintiff's claim for negligent infliction of emotional distress and against any other state law claims against defendants Flewelling, Goecke and Nordmann.

**IT IS SO ORDERED.**

Dated this 18th day of April, 2006 at Topeka, Kansas.


                              s/Richard D. Rogers
                              United States District Judge