IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

KIM REINDL and
MARY JOAN REINDL,

        Plaintiffs,
vs.                                              **Case No. 04-2584-RDR**

CITY OF LEAVENWORTH,
KANSAS, et al.,

        Defendants.

## MEMORANDUM AND ORDER

This is a civil rights, personal injury and wrongful death case. This case arises from a conflict which developed between a driver and police officers during a traffic stop. During the conflict the driver, Kelly Reindl, was forced to the ground and was struck multiple times by a police officer with a baton. He died several months later. It is disputed whether his death was caused by the actions of the police. His sister-in-law and mother have sued members of the Leavenworth Police Department in this case. This case is set for trial in October 2006. This case now before the court upon defendants' motions to exclude from the trial certain testimony from two witnesses.

### Motion to exclude the opinion of Dr. Peter Cristiano

Plaintiffs make the claim that the beating Kelly Reindl received on December 6, 2002 caused his death on August 23, 2003. Plaintiffs intend to support this claim with the testimony of Dr. Peter Cristiano. Dr. Cristiano is a board certified family

practice physician who has practiced for at least 20 years. He was Kelly Reindl's family physician from September 2000 through August 2003 and was familiar with Kelly Reindl's physical condition before and after the altercation on December 6, 2002. Dr. Cristiano testified in a deposition that the December 6, 2002 incident "precipitated . . . an earlier demise." Deposition at p. 18.

Defendants make three challenges based on the Daubert opinion to the testimony of Dr. Cristiano. Defendants argue that the opinion expressed in the deposition by Dr. Cristiano does not link Kelly Reindl's death to the alleged constitutional violation; that the deposition testimony does not assert that the blows suffered by Kelly Reindl on December 6, 2002 caused his death the following August under legal standards of causation; and that there is no medical principle which supports Dr. Cristiano's opinion and, therefore, the opinion is unreliable.

Plaintiffs respond by contending that Dr. Cristiano's testimony would provide a jury assistance in deciding a critical fact issue; that his testimony will be consistent with the legal standard of causation; and that his testimony is supported by his knowledge, training and experience as a physician.

Upon review of these arguments, the court believes it should conduct a further inquiry as to whether the proposed testimony of Dr. Cristiano is relevant and reliable before permitting a jury to hear the testimony. The court shall conduct a hearing outside the

presence of the jury to determine whether to admit testimony from Dr. Cristiano regarding the cause of Kelly Reindl's death.  A final decision upon the motion to exclude designated opinions of Dr. Cristiano shall be deferred until the time of the hearing. Plaintiffs shall have the burden of proof at this hearing. Plaintiffs should state specifically what opinions they seek to admit from Dr. Cristiano and demonstrate through the testimony of Dr. Cristiano that the opinions are admissible.

The court's scheduling clerk will contact counsel to schedule this hearing.

### Motion to exclude the testimony of Edward A. Leach

Defendants seek to exclude certain opinions offered by plaintiffs' witness, Edward A. Leach.  Mr. Leach is an expert in police procedures.  Defendants do not deny his expertise in the field.  However, defendants contend that Mr. Leach should not be allowed to testify:  that two defendants (Bridges and Flewelling) were able to force Mr. Reindl to the ground with an arm-bar; that once Mr. Reindl had been taken to the ground, the situation had stabilized to a general degree, in spite of the fact that he was not handcuffed; that the use of the baton by defendant Bridges was not a reasonable use of force, based on the totality of circumstances; and that prior to the baton strikes, a reasonable officer under similar circumstances would have first utilized the overwhelming police presence to force Mr. Reindl into handcuffs.

See Doc. No. 113 at p. 3 where defendants identify the conclusions they will challenge.

Defendants base this contention on the grounds that these opinions invade the province of the jury and of the court and, somewhat conversely, that the opinions are not relevant to the issues facing the jury and the court. The court has given careful attention to the cases cited by defendants, including Medina v. Cram, 252 F.3d 1124 (10th Cir. 2001) and Marquez v. City of Albuquerque, 399 F.3d 1216 (10th Cir. 2005).

In Medina, the plaintiff was a bail bond violator who threatened a bail bondsman with what he said was a gun. The police were called and tried to convince the plaintiff to leave his house peacefully. The plaintiff indicated to the police that he had a gun. Eventually, the plaintiff emerged from his house with his right hand wrapped in a towel concealing a staple gun, which plaintiff intended to look like a firearm. A police attack dog was released twice. The second time, the plaintiff fell to the ground and exposed the staple gun, which police officers believed to be a genuine firearm. A police officer who was following the plaintiff from behind thought he and other officers were in the line of fire. That officer and another officer shot the plaintiff from a short distance. The Tenth Circuit concluded that the officers should be granted summary judgment on the basis of qualified immunity. In doing so, they concluded that an affidavit from an expert did not

create a material fact issue because the affidavit was conclusory and because any violation of state law or police procedure mentioned in the affidavit was not actionable under § 1983. The violation in police procedure involved the officers creating a dangerous situation by approaching the plaintiff and failing to remain behind cover, and by failing to use pepper spray first to attempt to subdue the plaintiff. It should be noted that in Medina, unlike this case, the plaintiff was attempting to argue that the officers acted unreasonably by placing themselves in what they perceived to be a deadly situation. Plaintiffs are not making such an argument here. Plaintiffs are arguing that the baton strikes themselves constituted an unreasonable and excessive response to the circumstances.

In Marquez, the plaintiff was a female passenger in a car that was involved in a high speed chase after the car had refused to stop when the police attempted to pull it over for a minor vehicle infraction. The police thought (mistakenly) that the car was involved in a burglary earlier in the night. After the car struck a wall and stopped, the plaintiff exited the car, ignored a command to stop, and attempted to flee. The police officer ordered his dog to apprehend the plaintiff. The plaintiff alleged that the use of the dog constituted excessive force. The plaintiff sought to introduce the testimony of an expert witness at trial. The witness was to testify that the use of a police dog was reasonable only

where there was evidence of an "articulable threat to" the safety of an officer or a bystander and that the officer's actions violated well established law enforcement standards. The underlying theory of the expert's testimony was that any use of force beyond the minimum necessary was ipso facto unreasonable. The district court granted a motion in limine against this testimony. The Tenth Circuit held that this ruling was not an abuse of discretion because the testimony of the expert was only "tangentially related" to the reasonableness issue before the jury. According to the Tenth Circuit, a jury could find that an officer acted reasonably even if the officer did not use the minimum amount of force necessary and violated police procedures.

An objective reasonableness standard is applied to excessive force cases. Medina, 252 F.3d at 1131. "The reasonableness of an officer's conduct must be assessed 'from the perspective of a reasonable officer on the scene,' recognizing the fact that the officer may be 'forced to make split-second judgments' under stressful and dangerous conditions." Id., quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989). In the case at bar, one of the key issues is whether striking Kelly Reindl with a police baton was reasonable from the perspective of a reasonable officer on the scene.

In general, a district court has broad discretion in determining whether to admit expert testimony. Kumho Tire Co.,

6

Ltd. v. Carmichael, 526 U.S. 137, 152 (1999); U.S. v. Velarde, 214 F.3d 1204, 1208 (10th Cir. 2000). The aim of expert testimony is to "assist the trier of fact to understand the evidence or to determine a fact in issue." FED.R.EVID. 702.

In this case, a jury of lay persons may have to decide "from the perspective of a reasonable officer" whether there was excessive force. It seems logical to the court that such a jury might be assisted by the testimony of a person who has specialized knowledge in the area of police procedures, including the proper use of a police baton.

It cannot be gainsaid that experts in professional or industry standards often testify in court. In the Tenth Circuit, such testimony has included that given by a legal expert to the court regarding professional standards for death penalty counsel in a case where an objective reasonableness standard was applied to determine whether habeas relief should be granted. Fisher v. Gibson, 282 F.3d 1283, 1309 (10th Cir. 2002). Such testimony was also given as to the Code of Professional Responsibility in a legal malpractice suit, even though the Code did not establish the standard of care. Miami International Realty Co. v. Paynter, 841 F.2d 348, 353-54 (10th Cir. 1988).

Such testimony has also been approved in cases from other circuits involving claims of excessive force. One court recently commented that expert testimony is "routinely allowed" in excessive

force cases. <u>Richman v. Sheahan</u>, 415 F.Supp. 929, 940 (N.D.Ill. 2006) (approving in part expert testimony offered by defendants in an excessive force case). A similar comment was made in <u>Kopf v. Skyrm</u>, 993 F.2d 374, 378 (4th Cir. 1993)(expert testimony has often been admitted in excessive force cases). We believe the analysis in <u>Richman</u> is persuasive against defendants' arguments in this case regarding whether the proposed testimony usurps the function of the judge or jury. Other excessive force cases where expert testimony was given include: <u>Champion v. Outlook Nashville, Inc.</u>, 380 F.3d 893 (6th Cir. 2004) <u>cert. denied</u>, 544 U.S. 975 (2005) (plaintiff's verdict supported by evidence that officers' training was contrary to pepper spraying plaintiff after he had been handcuffed and lying on plaintiff while he was prone on the floor); <u>Calusinski v. Kruger</u>, 24 F.3d 931,937 (7th Cir. 1994) (defendants' verdict supported by expert testimony that defendants' actions were within proper guidelines for use of force by the police); <u>Kopf</u>, 993 F.2d at 378-79 (excluding expert evidence on police standards for use of dog and slapjacks was an abuse of discretion); <u>Kent v. Katz</u>, 327 F.Supp.2d 302, 308 (D.Vt. 2004) <u>aff'd</u>, 398 F.3d 644 (7th Cir.) <u>cert. denied</u>, 126 S.Ct. 238 (2005) (defense expert testified that wrist lock used by defendant was consistent with police training); but cf., <u>Pena v. Leombruni</u>, 200 F.3d 1031, 1034 (7th Cir. 1999) <u>cert. denied</u>, 530 U.S. 1208 (2000) (question on the use of deadly force in response to lethal and imminent danger was within lay

competence).

After considering this case law as well as the <u>Medina</u> and <u>Marquez</u> cases, the court shall make the following rulings as to the specific opinions being challenged by defendants:

**"Bridges and Flewelling were able to force Reindl to the ground with an arm-bar" & "Once Mr. Reindl had been taken to the ground, the situation had stabilized to a general degree, in spite of the fact that he was not handcuffed"** - These opinions do not invade the province of the jury or the court.  They represent an expert's interpretation of the events in a case, which is a common task for an expert.  While it is arguable that a lay person is competent to reach the same conclusions, an expert's familiarity with the use of arm-bars and the dangers presented by persons who have been taken to the ground may assist a jury in deciding the issues in this case.  In addition, these opinions do not appear to involve a conclusion resting upon the use of "minimum" force or professional standards.  Nor are they bare legal conclusions.

**"The use of the baton by Bridges was not a reasonable use of force, based on the totality of circumstances"** - While this opinion reaches an ultimate issue, it is not to be excluded simply on that basis.  FED.R.EVID. 704 states that an opinion is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.  This opinion may be of assistance to the jury if it is based on proper factors and the perspective of a reasonable police

9

officer.  It is not admissible if it is based on the concept that only the minimum amount of force necessary is reasonable force for purposes of § 1983 or that a violation of professional standards is <u>ipso facto</u> a violation of § 1983.  The examination of the witness will have to establish whether the opinion has a proper foundation. The court does not believe it is clear from Mr. Leach's deposition that the foundation is proper or improper.  Although plaintiff ultimately has the burden of proving that the opinion has the proper foundation, we do not believe it is appropriate at this stage to conclude that plaintiff cannot satisfy that burden.

**"Prior to baton strikes, a reasonable officer under similar circumstances would have first utilized the overwhelming police presence to force Reindl into handcuffs"** - Again, the court does not believe this opinion usurps the function of the court or the jury.  The court believes it would assist the court and the jury in making a decision in this case, assuming that the witness is otherwise perceived to be credible.

In conclusion, the court is frequently exposed to testimony which details the kind of specialized training given to police officers.  We believe a reasonable police officer might consider such training when he is performing his duties.  Therefore, lay persons who are not exposed to such training may find the testimony of the police procedures expert to be of assistance in deciding, from the perspective of a reasonable police officer, whether the

use of a police baton during an arrest was reasonable under the standards and factors applicable to a claim under § 1983.  For this reason, and consistent with the other reasons and statements given in this opinion, the court shall deny defendants' motion to exclude certain opinions of Edward A. Leach.

    **IT IS SO ORDERED.**

    Dated this 13th day of September, 2006 at Topeka, Kansas.

                                       s/Richard D. Rogers
                                       United States District Judge